UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Neal                                                        Civil Action No. 11-0648

versus                                                      Judge Tucker L. Melançon

Nabors Drilling USA, LP, et al                              Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion To Compel Arbitration And For Stay Of Proceedings filed by defendant Nabors Drilling USA, LP ("Nabors") [Rec. Doc. 7], plaintiff, James Neal's, Response in Opposition [Rec. Doc. 9] and Nabors' Reply thereto [Rec. Doc. 14]. For the reasons that follow, the motion will be granted.

*Background*

Plaintiff, James Neal, was employed by Nabors as a floorman on Nabors Oilrig 339 when he suffered an injury on the floor of the oilrig on November 28, 2009. *R. 1, Petition;* 9. Plaintiff filed a workers' compensation claim on June 18, 2010. *R. 9, Exh. A.* On June 23, 2010, Nabors terminated plaintiff's employment. *Id., Exh. B.* Plaintiff commenced this action against Nabors in the 15th Judicial District Court for the Parish of Lafayette, Louisiana on March 22, 2011 for wrongful termination under Louisiana Revised Statute 23:1361, *et seq.*,[1] intentional infliction of emotional distress and failure to provide notice required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), in violation of the Employee Retirement income Security Act of 1974 ("ERISA"). Nabors removed the case to this Court on April 26, 2011. *R. 1.* On May 26, 2011, Nabors filed this motion contending that plaintiff is obligated to submit to binding arbitration as evidenced by his execution of

---

[1] La. Rev. Stat. 23:1361(B) provides in pertinent part:

> No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States.

Nabors' Arbitration Agreement. *R. 7-2, Exh. 1, Aff. Of Weissinger; R. 7-3, Exh. 1-A; R. 7-4, Exh.1- B.*

## *Standard of Review*

The United States Arbitration Act, Title 9 of the United States Code, section 1, *et seq.*, provides that written provisions to arbitrate controversies in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. Section 3 of the Act also requires the court to stay proceedings where the court is satisfied that the issue before it is arbitrable under the agreement. 9 U.S.C. §3. Under Section 4, the federal court is directed to order the parties to proceed to arbitration if there has been a failure, neglect or refusal of a party to honor an agreement to arbitrate. 9 U.S.C. §4. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability. Such a presumption means that, '[i]n determining whether the dispute falls within the scope of the arbitration agreement, ambiguities ... [are] resolved in favor of arbitration.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 417-418 (5th Cir. 2006) (citations omitted).

## *Analysis*

Nabors moves the Court for an order compelling plaintiff to arbitrate his claims against Nabors as required by Nabors' Arbitration Agreement, the Employee Acknowledgement [sic] Concerning Nabors Dispute Resolution Program ("DRP"), and to stay the lawsuit pending resolution of the arbitration proceeding. *R. 7.* Plaintiff opposes Nabors' motion arguing first, that plaintiff's employment contract with Nabors does not involve interstate commerce as required under the Federal Arbitration Agreement ("FAA"), and second, that plaintiff's rights arise under the Workers' Compensation Laws of Louisiana, which are specifically excluded from the DRP. Further, Neal contends in the alternative that he "has

2.

numerous defenses at law and in equity" including that: (1) the DRP contains conflicting terms, rendering it unenforceable; (2) the DRP is an illusory arbitration agreement; (3) the DRP is an unconscionable agreement; and (4) Louisiana Revised Statute 9:4216 prohibits arbitration agreements for laborers such as Neal. The Court will address these issues in turn.

*1. Whether or not the parties have a valid agreement to arbitrate*

Paragraph 14 of Nabors' DRP states in pertinent part:

14. Assent

> Employment or continued employment after the Effective Date of this Program constitutes consent by both the Employee and Company to be bound by this Program, both during the employment and after termination of employment. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Program.

*R. 7-3, Exh. 1-A, DRP, ¶ 14.* Plaintiff represents that he executed the DRP at his job site "after he had been offered and accepted the job and after he had traveled from his home near Jackson, Mississippi to Baton Rouge, Louisiana." *R. 9, p. 3.* On September 8, 2009, plaintiff signed an "Employment Acknowledgement [sic] Concerning Nabors DRP," which provides in pertinent part:

> By my signature below, I acknowledge and understand that I am required to adhere to the Dispute Resolution Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration. I further understand that my employment or continued employment with the Company constitutes my acceptance of the terms of this provision as a condition of my employment or continued employment.

R. 7-4, Exh. 1-B, Acknowledgment Form.

Nabors' DRP provides that "[a]ll Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules. *R. 7-3, Exh. 1-A, DRP, ¶ 4.* Dispute is defined as :

> [A]ll legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Program or by an agreement to resolve Disputes under the Program, or between a person bound by the Program and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to:
>
> 1) this Program;
>
> 2) the employment or potential re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;
>
> 3) employee benefits or incidents of employment with the Company;
>
> 4) any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veterans status or disability; sexual or other kinds of harassment; worker's compensation retaliation; defamation; infliction of emotional distress, antitrust claim concerning wages and otherwise, or status, claim or membership with regard to any employee benefit plan;

Id. at ¶ 2E.

In determining whether to compel arbitration, courts perform a two step inquiry. *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886-887 (5th Cir. 2009). The court must first determine whether the parties agreed to arbitrate the dispute in question. *Id.* This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of the arbitration agreement. *Id.*

The Court will first address the second consideration, whether this dispute falls within the scope of the DRP. Plaintiff alleges in his Complaint that Nabors terminated his employment and failed to provide him with the notice required under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). R. 1, ¶¶ 10, 12. He further alleges that Nabors

wrongfully terminated him in violation of La. R.S. 23:1361, et seq, and as a result thereof he asserts he suffered intentional infliction of emotional distress. *Id. at ¶¶ 14-20.* The DRP specifically contemplates disputes concerning claims regarding an employee benefit plan, wrongful termination and intentional infliction of emotional distress. Thus, plaintiff's claims fall within the scope of the DRP.

As to the validity of the agreement to arbitrate, plaintiff first contends that a valid agreement to arbitrate does not exist because the DRP is not a contract involving commerce and the FAA does not apply. The Supreme Court of the United States has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (holding that Congress' Commerce Clause power extended to the transaction in that case because, among other things, one of the parties to the transaction "engaged in business throughout the southeastern United States"). It is uncontested that as a condition of his employment with Nabors, plaintiff signed Nabors' "Employee Acknowledgement Concerning Nabors Dispute Resolution Program," agreeing to be bound to Nabors' DRP. *R. 7-3, Exh. 1-A; R. 9, Exhs. C & D.* The affidavit of Glen Weissinger, Nabors' Director of Human Resources, states that Nabors is a Delaware limited partnership with operations in five states and as part of their continued employment with Nabors all employees are subject to the DRP, regardless of where they work. *R. 7, Exh. 1, ¶ 6.* The DRP at issue therefore affects commerce as required under the FAA.

Plaintiff next argues that because the Acknowledgment he signed states that "the [DRP] is not a contract of employment," no contract exists in this case. A district court applies ordinary state-law contract principles when the question of an arbitration agreement's

5.

formation is at issue. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir.2006). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004). As plaintiff filed this action pursuant to Louisiana law in Louisiana state court, Louisiana law governs the DRP. *R. 1*.

The Fifth Circuit has determined that, under Louisiana law, an arbitration clause contained within an employment application, such as the DRP in this case, "create[s] a binding agreement to arbitrate" when an employee signs the employer's arbitration acknowledgment form and continues to work for the employer. *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005) (applying Louisiana contract law). Here, plaintiff signed the DRP as a condition of employment, acknowledged that he understood he was "required to adhere to the Dispute Resolution Program [DRP] and its requirements" and continued to work for Nabors. Contrary to plaintiff's arguments, the DRP constitutes a contract between plaintiff and Nabors.

2.

*Whether the DRP is precluded under the Workers' Compensation Statute*

Plaintiff asserts that the DRP expressly excludes from arbitration his claim for retaliatory discharge under La. R.S. 23:1361 based on the following language in the DRP:

> "Notwithstanding anything to the contrary in this DRP, the DRP does not apply to claims for workers' compensation benefits or unemployment compensation benefits."

*R. 7-3, Exh. 1-A*. In particular, plaintiff contends that his retaliatory discharge for the filing of a workers' compensation claim arises by La. Revised Statute 23:1361(B) which is "found *within* the Louisiana Workers' Compensation Act." *R. 9*.

Nabors argues that *Sampson v. Wendy's Management, Inc.*, 593 So.2d 336 (La.1992), is dispositive of the issue. In *Sampson*, an employee filed an action for retaliation against her employer alleging she was discharged because she had claimed workers' compensation benefits. *Sampson*, 593 So.2d at 336-37. Plaintiff sought civil penalties under 23:1361. *Id.* Despite the fact that the Workers' Compensation Act ("Act") specifically prohibited retaliation, the court held that plaintiff's claims were delictual in nature and therefore not subject to the exclusive jurisdiction provision under the Act. *Id.* at 338. Reasoning that retaliation constituted a delictual employment law matter rather than a workers' compensation matter, the court held that Louisiana district courts had not been divested of jurisdiction for matters related to 23:1361. *Id.* at 338-39; *see also, Albe v. Louisiana Workers' Compensation Corp.*, 700 So.2d 824 (La., 1997) (citing *Sampson*); *Charles v. Transit Management of Southeast Louisiana*, 1994 WL 479105 (E.D.La.1994) (Sear, J.) (same). But cf. *Gibson v. Wal-Mart Stores, Inc.*, 2010 WL 1424406, *1 (E.D.La., 2010) (Barbier, J.) (declining to apply *Sampson* and remanding to state court). Thus, plaintiff's claim under 23:1361 is properly before the Court.[2]

### 3. Whether the DRP's Arbitration Provision is Conflicting

Plaintiff argues that the DRP contains conflicting provisions that prevent arbitration, stating, "it is axiomatic that an arbitration agreement by definition restricts a person's constitutional and legal rights to courtroom access." R. 9. Specifically, plaintiff contends that he will be deprived of the right to have a trial "by a jury in a [sic] Article 3 court."

The jurisprudence is clear that "[a]n agreement to arbitrate under the FAA is effectively a forum selection clause not a waiver of substantive statutory protections and

---

[2] Plaintiff filed a claim for workers' compensation benefits related to the subject accident on June 15, 2010. *R. 9, Exh. A, OWC Claim.*

benefits." *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 678 (5th Cir. 2006) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 (2002)). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Here, the DRP preserves all federal and state rights, including all federal and state causes of action:

> 8. Applicable Law
>
> > C. Other than as expressly provided herein, or in the Rules, the Substantive legal rights, remedies, and defenses of all Parties are preserved. In the case of arbitration, the arbitrator shall have the authority to determine the applicable law and to order any of all relief, legal or equitable, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.

*R. 7, Exh. 1-A,* ¶ *8.C.* By agreeing to arbitrate any claim he may have against Nabors, plaintiff did not forgo any of these rights, but merely agreed to submit to the jurisdiction of an arbitral, rather than a judicial forum.

*4. Whether the DRP is Illusory*

Plaintiff contends that because the DRP contains a provision which permits Nabors to unilaterally cancel the agreement by giving 10 days notice of termination, it is illusory and therefore not binding on plaintiff. While plaintiff relies solely on jurisprudence applying the Texas law doctrine of illusory promises, the Fifth Circuit has found there is "some support in Louisiana law" for plaintiff's position under the related doctrine of unconscionability. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166- 167 (5th Cir.2004) (While "[n]o section of the Louisiana Civil Code directly addresses ... the doctrine of

8.

unconscionability ... the theory of such decisions, often, is that an unconscionable contract or term can be thought of as lacking the free consent that the Code requires of all contracts.").

In *Iberia Credit*, cellular phone customers brought claims against their respective cellular providers. *Id.* at 162. Some of the customers' contracts contained arbitration provisions, and those providers filed motions to compel arbitration. *Id.* The arbitration provisions contained language by which the service provider retained the right to change any of the terms in the agreement on written notice to the customer. Because the service provider had the unilateral right to alter any terms, some customers argued, it was not bound whatsoever and the agreement was illusory. *Id.* at 173. Citing Louisiana appellate cases and other federal appellate and district court cases concerning arbitration agreements that contain change-in-terms clauses, the *Iberia Credit* court concluded that, under Louisiana law, the term was not unconscionable nor illusory so long as the customer had an opportunity to review the new terms. If the customer had notice and continued to accept service, the court reasoned, then both parties remain bound under the new terms. *Id.* at 173 ("The notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms.").

Here, paragraph 7 of the DRP provides the terms of termination of the Program:

7. Termination

This Program may be terminated by Sponsor at any time by giving at least 10 days notice to current Employees. However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agree.

R. 7, Exh. 1-A, ¶ 7. As the DRP requires that any termination of the arbitration agreement is subject to ten days notice to the employee and is inapplicable to arbitration proceedings

9.

that have already been initiated, the promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable.

### 5. *Whether the DRP is Unconscionable*

Plaintiff asserts that the DRP is a "take-it-or-leave-it" arbitration agreement and is unconscionable under Louisiana law. Specifically, plaintiff argues that he did not discover that his employment with Nabors was conditioned upon signing the DRP until after he had expended time and money to travel from his home in Jackson, Mississippi to the job site in East Baton Rouge Parish. Because the bargaining power between plaintiff and Nabors was so one-sided when he signed the agreement, the Court should find it to be unconscionable.

In addition to the previously discussed issue of whether the arbitration agreements containing change-in-terms provisions were illusory, the Fifth Circuit in *Iberia Credit* also considered whether one of the agreements was unconscionable under Louisiana law by its one-sidedness. *Id.* The court held that arbitration agreements which require only the employee/customer to arbitrate every dispute but leave the employer/company with the choice of pursuing a lawsuit instead of arbitrating, are unconscionable and invalid. The *Iberia Credit* court stated,

> [G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].... No section of the Louisiana Civil Code directly addresses, in so many words, the doctrine of unconscionability or the related concept of adhesionary contracts. Nonetheless, Louisiana jurisprudence does recognize that certain contractual terms, especially when contained in dense standard forms that are not negotiated, can be too harsh to justly enforce. The theory of such decisions, often, is that an unconscionable contract or term can be thought of as lacking the free consent that the Code requires of all contracts. In order to be invalidated, a provision must possess features of both adhesionary formation and unduly harsh substance.

*Iberia Credit*, 379 F.3d at 166-168.[3]

Such one-sidedness, as found by the court in *Iberia Credit*, does not exist in this case and the Court finds that there is nothing unconscionable about the DRP. The provisions are neither unduly harsh nor do they reflect any fundamental unfairness to plaintiff by placing him in a position inferior to Nabors. There is no allegation that plaintiff was forced to sign the DRP or even objected to it. "[W]hen the employee 'could have avoided the clause by simply rejecting the employment with the defendant,' the requisite difference in bargaining position was lacking." *McBride v. Mursimco, Inc.*, 2004 WL 1459565, 3 (E.D.La.,2004) (quoting *Welch v. A.G. Edwards & Sons, Inc.*, 677 So.2d 520, 526 (La.App. 4th Cir.1996)). "[T]he mere existence of unequal bargaining power does not make an arbitration clause unconscionable...." *Davis v. EGL Eagle Global Logistics L.P.*, 243 Fed. Appx. 39, 46 (5th Cir. 2007). Plaintiff's argument that the DRP is unconscionable is without merit.

### 6. Louisiana Law Prohibits the DRP

Finally, plaintiff contends that La. Rev. Stat. 9:4216 forbids arbitration in this case. Section 9:4216 is part of the Louisiana Arbitration Law ("LAL"), La. Rev. Stat. 9:4201, *et seq*, and states in pertinent part:

> Nothing contained in this Chapter shall apply to contracts of employment of labor or to contracts for arbitration which are controlled by valid legislation of the United States or to contracts made prior to July 28, 1948.

Thus, section 9:4216 limits the application of the LAL by eliminating from its jurisdiction: (a) contracts of employment of labor; (b) contracts for arbitration which are controlled by valid legislation of the United States; or (c) contracts that existed prior to 1948.

---

[3] In addition to its discussion on the issue of whether the arbitration agreements containing change-in-terms provisions in *Iberia Credit* were illusory, the Fifth Circuit also considered whether one of the agreements was unconscionable under Louisiana law by its one-sidedness. *Id.*

11.

In this case, the DRP is controlled by the FAA, Title 9 of the United States Code, section 1, *et seq.* Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). By enacting the FAA, " Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* The "broad principle of enforceability" of the FAA may not be "subject to any additional limitations under state law." *Id.* at 489-490.

Thus, the Court may not apply any limitations in the LAL which are in addition to or inconsistent with the FAA. Because the LAL is inconsistent with the FAA as to contracts of employment of labor, the FAA controls and plaintiff's argument that the employment agreement does not comply with the LAL cannot be considered by the Court. *See Rogers v. Brown*, 986 F.Supp. 354, 358 (M.D.La.,1997).

*Conclusion*

Applying the standards set forth by the Fifth Circuit, the Court finds the DRP is valid and Nabors' Motion to Compel Arbitration will be granted. Pending completion of arbitration, the Court will administratively close this case pursuant to Section 3 of the FAA.[4]

---

[4] Section 3 of the FAA mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.